Good morning and welcome to the 9th Circuit. We have read your briefs, we are looking forward to your arguments. We will do the cases in one instance out of order in which they appear on the day sheet. We will hear the Diversified Products case first. It's Diversified Product Industries v. Skyline Steel. When you're ready. Good morning, Your Honor. May I please the Court, Neal Saltman, I was the Mayor of Brown, LLP for Skyline Steel. Turning first to the three-part test for vacating defaults under Rule 60. I think there should be no serious doubt about the fact that plaintiff would suffer no prejudice if the default is vacated. District Court did not find any evidence was lost. It did not find that any assets had been put away. The sole basis for the finding of delay was the delay on bringing the motion to vacate. Motion to vacate was brought within 30 days of notice to Skyline that the default had been entered. That's as soon as you could bring a motion, because under the local rules of the Central District, it takes you 30 days to notice a motion and go through the meet-and-confirm process. Obviously, Rule 60 permits up to a year for a 60-b-1 motion to be brought. This was obviously well before that. The remaining 20 months between the entry of the judgment and the bringing of the motion was attributable solely to the fact that Skyline didn't know about it, and therefore was not within its control to move more quickly, because it received no notice from either the District Court or from Plaintiff's Counsel. And I think the Pioneer case and the other cases make clear that it has to be something that you control and that you know about. One thing I noticed about this case was that the person who received the notification of the case within the company, I believe you received it at the end of May, he was gone from the company in November, and we have no affidavit from him. We would rather have an affidavit from his successor. And the other side makes a point of saying, well, wait a minute, if we're trying to figure out culpability, we need an affidavit from him. What's your response to that? Well, there's no affidavit in the record, obviously. He was apparently long gone, my understanding. Well, not that long gone. I mean, you know, we're talking a year and a half by the time... It was a little bit over a year. It was November 2008 to February, January 2010, so about 14, 15 months. I wasn't counsel, obviously, below. My understanding is that they just had lost contact with him. Oh, you know, come on. If they wanted to find him, they could find him as easily as the other side could have found you. That is to say, as far as I know, he's not on the witness protection program. I mean, he's just no longer with the company. He's no longer with the company, and the record doesn't reflect anything other than they didn't have any contact with him, and there's no affidavit from him. And there's just nothing in the record one way or the other. That wasn't an argument that was really made below as a reason. I think it doesn't really make any difference as a matter of law, because obviously he didn't hire counsel, he didn't retain anybody, he didn't tell anybody about it. See, I'm not sure it totally doesn't make any difference. It may, in the end, not be fatal to your version of the case, but this culpability question is a difficult one. And there is culpability if someone has refused to answer for some strategic reason or whatever, and it's pretty clear from what we do know that it fell off the table in his office. Yes. And he's the only one who can tell us for sure why it fell off or how it fell off the table. I think that's correct. And the next question is, when you get to the culpability question, in fact, that's no different, for example, with what happened in this court's decision in Brandt, where it got to the parent, and it was then sent to the subsidiary, and nobody did anything with it. And I don't think there was any explanation. But in Brandt, I think we got, and I'm sure you noticed, Judge Rollins and I were both on that panel. I did notice. Although neither of us wrote the opinion. As far as I can recall, anybody who had precipient knowledge or who could have thought to be, we heard from everybody that I think we could have heard from. And then they did their stuff they didn't know, but we heard from all the people. And I think where the issue differs a little bit is the following, that for culpability, obviously there are two parts of it now, I think, after franchise holding in Mesley and Brandt and TCI. One part is, what happened? Why wasn't it done? The second part is, is there affirmative evidence of bad faith, effort to manipulate, or anything of that sort? And that requires affirmative evidence of that. I think what Mesley tells us is that given the desire to decide cases on the merits, we shouldn't assume bad faith. There's required to be proof of bad faith. Accepting your point, which is obviously correct, that we have nothing from him in the record. That doesn't give, I think, rise to an inference of bad faith. There's no other reason one can suggest as to why Skyline, which is a very large steel company, would get any benefit out of not answering the complaint. There's evidence that there were eight complaints filed that year against Skyline Steel. Seven of them went to this fellow. Seven of them were referred off to counsel. And this one, I think the only inference is that it fell into a hole somehow. And we just don't know why or how. But I think the next step of, was there a reason for it? Was there some effort to game the system? Which is clearly what, for example, franchise holdings focuses on. There's no evidence of that. And the lack of evidence of that, I think, is sufficient to do away with the finding of culpability. Certainly in light of Mesley and Brandt, which obviously succeeded the district court's decision here. The other issue that I think is of interest is the meritorious defense issue. The district court obviously said, well, you only told us there was a defense to the contract claims, and the district court already decided there was no contract. But obviously the meritorious defense issue is one that says, do you have some defense so that something will be different if we remand it and it goes back for trial or disposition? And it doesn't have to have a great deal of proof. It just has to have some reason to believe that you get a different result at the end. I think the easiest answer to that question is the damage question. The damage case here is quite flawed. And that was all in front of the district court from the proof up. And there's no question, I think, that if you look at what the contract claim is, the supposed interference claim with FCI, that there's no agreement on price and there's no agreement on quantity. And, in fact, there's no notation at all, no evidence, affirmative evidence at all, that FCI ever accepted what I think is very clearly at ER 148 the offer. And if there was no acceptance of the offer by FCI, there was no contract with which to interfere. Even if one thought there was an inchoate, vague contract to do business together, there's no agreement on the price and there's no agreement on the quantity. Some documents indicate, the document that they rely upon, ER 148, indicates 23 beams being sold. The supposed deal was for 95 beams. Damages were awarded for 95 beams. And I think if you look at that evidence that was all in the record in front of the district court, it's hard to conclude that there wasn't a defense at least on damages or excessive damages. So, counsel, what evidence of a defense on the merits was presented to the district court by your client? The record reflects two pieces. One said there was no contract between Skyline and ER 148. That was just a conclusory statement. That's not evidence. Well, I think that it was one need not prove it. One need to be able to assert that there's a reasonable defense. The district court found that there was a reasonable defense in the sense that the district court said there's no contract there. So the district court obviously didn't think there was a contract with which. No contract where? Between FCI and Diversified. The next question is whether there was evidence of a contract between Diversified I'm sorry, I should have said between Diversified and Skyline. The district court said there's no evidence of that contract. Right, but that doesn't, I mean, for purposes of a meritorious defense, that's not the point. Well, I think the point is when the district court awarded damages, it awarded damages on the basis of a supposed contract between FCI and Diversified. That's right. So what was your evidence that you had a meritorious defense to the interference with business opportunity? Well, I think the record reflected at the time the motion was made, the record was fairly full because there had been a prove-up, there had been two or three go-rounds, and the damage evidence also reflected that there was a liability defense, that there was a lack of a contract between FCI and Diversified. Did you make that point? I mean, your pleadings, the pleadings, did you do the pleadings in the default? No, no, I wasn't there. The pleadings were very thin in terms of asserting a meritorious defense. They were absolutely thin. There's no question about that. But I think the question is when the district court entered its order refusing to vacate, what was the record in front of it? And I think if you look, for example, at the TCI case, the court there looked at what the record was, not just what was in the pleading. If it's just the pleading, I think we're looking at a form over substance because the pleading tells you what you're going to prove. But we already have a record which has both the contractual documents and the damage documents in it. Then the district court should be looking at what that evidence is. So is it your argument that TCI requires the district court judge to look at the entire record in determining whether or not there's a meritorious defense, and the person opposing the entry of default judgment doesn't have to specifically put that evidence in front of the judge? I think TCI supports looking at the record as a whole to see if there's a defense. I think the general damage law on prove-ups for defaults also suggests that one must have a real evidence in support of the damage claim when the district court makes the decision to vacate the default judgment after the judgment has been reduced to dollars. So in that sense, it seems completely formalistic to say the district court had a whole bunch of evidence in front of it which showed that there was no contract between FCI and Diversified and which showed even if there was a contract that the damages were grossly overstated and say the district court could ignore that for purposes of the default. In your view, what was the evidence before the court that reflected that there was no contract between FCI and Diversified? ER-148. ER-148 is not anything that came from FCI. It's not on their letterhead. It's supposed to be a purchase order. It came from the seller, not the buyer. It's not initialed by the buyer. There's no evidence that the buyer received it or sent it back. And there is evidence in the record that certainly the buyer rejected it because within two hours of receiving that, he called Skyline and ordered the same beams from Skyline. What about the declarations that were in the record? Well, the declarations in the record refer to the documents. Since they refer to the documents, they don't add anything to them, and this Court is not required to give much credence to declarations which are contradicted by the documentary evidence that they rely upon. There's no credibility determination here. There was no hearing in front of the district court. There's no basis for the district court to make a credibility determination one way or the other. So this rises and falls, and they say it in their brief, rises and falls on whether ER-148 was the contract. I'd like to reserve the rest of my time unless the Court has additional questions. Thank you. Good morning, Your Honor. Good morning. May it please the Court. Stephen Berkowitz on behalf of the Appellee Diversified Product. Your Honor, there are two glaring deficiencies in this manner presented by the appellant. First, much of the argument before you in the written brief and today was never presented before the lower court. Well, the problem is there was no hearing. Perhaps it would have been presented if there had been a hearing. They had the opportunity after 31 days to present the moving papers, the vacate. Nowhere in those moving papers, including the declarations, do they ever challenge the damages calculation. Do they ever challenge the non-alleged nonexistence of a contract between FCI and Diversified. You're hearing this for the first time in the briefs and the argument this morning. They weave those issues. Well, there's sort of a conclusory assertion that there is no contract in the papers to set aside. In the papers? I mean, there is a statement. There was no contract. Right? You're talking about by the appellant. Right. In fact, the court below found it was a conclusionary statement. If you were to look at the Memorandum of Appointment of Authorities filed by appellant, it was basically one page, one paragraph devoted to meritorious defense, and it basically said we didn't enter into a contract with Diversified. Now, remember, strictly between Skyline and Diversified, they didn't address the other contract between FCI and Diversified. And so what the court said with respect to the meritorious defense is it's conclusionary. But the problem I have with your argument is, you know, default judgments are highly disfavored. And at a minimum, there should be an opportunity for the person who's being defaulted to have his or her day in court to explain why default shouldn't lie. So that theoretically, as a matter of principle, that's the problem I'm having with being asked to affirm this default judgment because the other party really never had an opportunity to advance its case before the court. Which leads me to the other glaring deficiency. Mm-hmm. The appellant at least had an obligation to set forth the prima facie argument before the lower court. And here, the glaring deficiency is the sole person who had percipient knowledge of the facts in this matter was Richard Lee, the CFO. Yet they not only did not include a declaration from Mr. Lee, they didn't even state to the district court the problems in, if there were any, in locating this person or possibly asking for additional time. We have nothing from Lee. And so what we're left with is now we, with respect, for example, the first prong, culpability, in which, under the Mesley case, you can assume intentionality if the person or entity receiving it is legally sophisticated. And here, we don't know anything about Richard Lee because he wasn't presented before the lower court. That, to me, just makes it more important that a hearing be held because as a district court judge, faced with that, you know, I would have had a hearing and put them on the spot in terms of, why don't you have something from this guy? Where is he? But none of that was ever fleshed out. And I think that's why you have a hearing on the default judgment so you can flesh all of that out and give the party an opportunity to either show they were culpable or not culpable or be able to rest assured that they were culpable. And I just don't feel confident that the record shows that one way or the other. Let me address all the opportunities that the appellant had. Number one, initially when the complaint and summons was received. Number two, when they received notice of the default judgment, 31 days later, they present their moving papers and they still didn't have anything concerning the facts in this matter. In fact, the district court found no facts. Three, no reply. Four, no reconsideration requested. You have absolutely the bare minimum presented with respect to the meritorious defense, for instance, Your Honors. Remember, there were no viable causes of action at that time concerning the breach of contract causes of action because the district court specifically found that they were not viable and was only proceeding on the court causes of action. And so you have two orders prior to the judgment and the judgment itself, which strictly says and expressly says the district court is relying on the interference causes of action. And yet when we look at the moving papers filed in support of the motion to vacate, the single paragraph devoted to that only addressed in a conclusionary fashion the contract causes of action. That's not presenting a meritorious defense to the operable viable causes of action of which they were placed on notice. So my ---- What's your response to opposing counsel's position that the court has the obligation to look at the entire record to determine whether or not there's a meritorious defense? Not true. It was reduced to a judgment. And then you look at what did the judgment rely on. It relied on simply two causes of action. And there were two orders prior to that stating in effect these other causes of action are not being ---- are not viable. And therefore ---- So is it your view that in determining whether or not the default judgment should be set aside, the court doesn't have an obligation to go back and look at everything in the record? You do have a ---- you should look at everything in the record. But here's the key. With respect to this particular issue, it's what is involved in the judgment, simply two causes of action. Next, was the appellant provided with reasonable notice that those were the only causes of action that were being pursued? Remember, their counsel had 31 days' notice to review these papers, the two orders and the judgment itself. How could they not have known that these were the only viable causes of action at stake in this matter? Nothing else was involved at that point. And yet they chose not to raise any facts in support of a defense to the tort causes of action. Here's my problem with the case as I look at your version of the case. I understand what you're saying about the slightness, I'll call it that, of the papers that were filed seeking to set aside the default judgment. I understand that. But looking at what your client did, they file a complaint, they don't get an answer, they file it against a big company, the only likely reason you're not getting an answer is that they've made a mistake. There are other possible reasons, conceivable reasons, but the only likely reason is that they've simply made a mistake. Your office doesn't even give them the courtesy of a telephone call. You're just playing gotcha. And that would be the office of the underlying attorneys. That's right. Right. Yeah, yeah. How can you possibly justify practicing law that way? There is an ethical rule that once you are aware of the identity of counsel representing a party, you would contact them. Here we did everything, in this case, the attorneys did everything required of them. That is, they weren't aware of any appearance. I'm not suggesting I'm about to send somebody to report somebody to the bar. I'm asking a somewhat different question. A complaint is filed against a very large company. The ordinary course of business, you know that company would respond. The company does not respond. And I understand it's not you. I'm saying you in the generic sense. Your client doesn't even give that person the courtesy of, did you lose that complaint? All right. Now, let me look at it from this vantage point. In this case, a fraud was committed, in effect. An interference with contractual relations was committed. That's what you said. That's what you said. That's the cause of action. Time was of the essence coming from the vantage point of the party affected my client. And you have a corporation presumed to have sophisticated, legally sophisticated people. Which is exactly why you should have thought it was a mistake and it has fallen off the table. Not necessarily. Because we don't have all the facts. By the way, in most times, you can presume that. But here, in view of what occurred thereafter, not even presenting a lead declaration, not explaining why that declaration had been presented. That's way down the line. I'm asking what's in the lawyer's head when there's not been a timely answer filed from a major company with this lawsuit that looks like it's going to be a million dollars? Well, it's a situation of following the terms of the law and not going beyond that. And taking to the fact that... I don't want to get too far into this. Holmes has a theory about the bad man, which I'm sure you're aware of. The Oliver Wendell Holmes? Yes. Yeah, yeah. All right. Okay. I'll say no more on that point. But I have to say that I'm somewhat surprised that an ethical law firm would not just make a courtesy call and say, did you lose the complaint? Here's what's surprising to me. You have a large corporation. And not only do they fail to respond after their agent of process received it and after their CFO, who is the contact man, received it. But if there was any hint that there was an innocent explanation for this, and by the way, I'm answering after the fact. I agree. Why is it that they simply didn't present that evidence? There is absolutely no explanation unless there may have been some type of bad faith involved somewhere, some explanation. Whose burden of proof is it that there's bad faith? Well, here's what the Nestle case said. Nestle case said that if you ñ by the way, the burden of proof with respect to vacating, of course, the default judgment, lies with the appellant. And the burden of proof to show sufficient facts in support of that good cause, again, lies with the appellant. Where's the answer on bad faith? Whose burden is that? It says that once you show a legally sophisticated recipient of the complaint and summons, without any additional facts showing bad faith, the court can assume intentionality. And so my response to that is this. Intentionality is not, of course, necessarily the same thing as bad faith. In the Nestle case, when they were talking about intentionality, they were using it to some extent interchangeably with some type of notions of bad faith. And a sophisticated business person is not the same as a person who has legal sophistication. I think that's mixed in two concepts. By the way. A lot of very astute business people are not sophisticated legally. Okay. We know for ñ and I can state that the CFO, based on the limited information we have, and we don't have more because of the circumstances, was legally sophisticated based upon the following. You just had an admission from counsel that eight lawsuits had come in. He was the contact person. Therefore, he has ready connection with attorneys. It's a processing thing. Second. He knows when a lawsuit comes in, you're supposed to get a lawyer for it. That doesn't mean he's legally sophisticated as to what the ramifications, well, of everything are. Well, the definition of legal sophistication in the case law is someone who understands the legal ramifications, in this case, of not responding to a complaint. This person is not just a layperson. This person is an officer of a significant corporation. He was chosen for that. He readily deals with the complaints and summons. By the way, the reason why we don't have more information is because we weren't presenting with that information because they hid this guy. I'm using this. You said that they hid him? When I say it, I was going to say I'm using it. What you mean to say is you didn't really mean to say hid. That's correct. What I'm saying is they didn't present him. Right. They didn't present him. Why not present him? Because we can't answer the exact questions of what occurred, including legal sophistication, unless he's before us. We can only answer that based on the limited knowledge we have, and we definitely know that this CFO was not a layperson. But the Court could have required them to produce him. But whose burden is this with respect to the motion to vacate? They have the burden of proof. They didn't ask the Court that. The Court is not going to act as a third attorney for them. How difficult would it have been either to present, obtain this guy, subpoena or otherwise, or if you can't, explain that to the district court and ask for some leeway? That's the problem with not having a hearing. That's what you do when there's a motion to vacate. The district court judge has a hearing, and all of those things can be sorted out. And at that point, the district court judge is in an optimum position, optimal position in terms of deciding, you know, whether there's bad faith, whether there's fault, what happened. But I feel like the district court judge in this case was kind of handcuffed in terms of making an informed decision because there wasn't enough evidence there. And here's my response to that. If they had at least set forth some argument, prima facie evidence, a request, anything, then you would give the district court an opportunity to do exactly what you suggest. But they didn't. They never invited it. It's true, but the district court judge, though, manages the case. I mean, even though the attorneys are the ones who file the pleadings, it's still the district court judge's responsibility, in my view, having said as a district court judge, to make sure that the parties get an opportunity to flesh out everything. Oftentimes, I mean, it's not unusual for parties to file bare-bones pleadings and wait until the hearing to flesh out everything. That's not unusual. When I look at it from the district court's perspective, and in terms of having an efficient calendar moving along, and I'm dealing with a significant corporation who didn't even respond initially to the complaint and summons, and then sets forth a one-page memorandum of points and authorities with one paragraph devoted to each of the three major prongs and with no declaration from Richard Lee and not asking for reconsideration, not filing a reply brief, at some point the district court says, look, you're not meeting your end of the bargain. Why should I go the extra step when I'm dealing with a large calendar and efficiency to now act as the third attorney? And the interest of justice. In the interest of justice, we need. Not efficiency. In the interest of justice. But the attorney has to take some responsibility for this corporation, and the corporation has to take some responsibility. We're not dealing with an improper here. We can't hold hands. I agree that if everything was perfect and we didn't have to have these other concerns regarding efficiency of calendar, and we would do that. But in this case, how many strikes are you going to give them? Counsel, you know, nobody's perfect. I mean, things fall through the cracks all the time. And God forbid you're on the other side of this issue at some point. We've all been there. And, you know, you take a really hard position for a case where sometimes, you know, things just fall through the cracks and it's a little leniency is in order sometimes when people just make a mistake. I mean, I don't see anything in the record here that speaks of bad faith or manipulation of the process. I think that's a very hard line to take. And I'm just speaking for myself. I know all of us as practitioners have been at a point when we've blown it, you know, and we're throwing ourselves on the mercy of the court, and it would be nice to know there's mercy there when you need it. You know, we don't have enough information whether there's bad faith or not. And the reason why we don't have enough information is we just don't have the declaration of leave. So we're assuming things in a vacuum to some extent. Well, generally, corporations don't act bad faith. All right? You know what? Here there's no evidence of bad faith. The point is that we don't have that evidence. Your overtime, if you'd like a paragraph or so to sum up. I'll sum it this way. You know, there were three prongs they had to satisfy. They had to provide facts to support that. They didn't provide any facts. It was all conjecture. It was speculation. They didn't provide the declaration of leave. They didn't ask the court for additional time. They didn't give it any explanation. Counsel, before you leave, could you address ER 148? Yes. That document, and if you look at footnote 14 of my brief, shows a response by, in this case, FCI. If you look at what was circled underneath, that — But the appellate counsel has a good point. This is not a purchase order. Ah, but you can — you look at several things. You first look at — it says P.O. It was referring to purchase order. Wait. When does it say P.O. on 148? Look at the very bottom, in which there's a circle over the P.O. But there are other real purchase orders in the record, and they don't look like this. By the way, if given the opportunity, and this was not fleshed out because it wasn't an issue and it wasn't — by the way, you have to understand, none of these issues were raised, and they waived those issues as a matter of law. No, it's not waived. The point is, it's in the record for the district court. ER 141 shows an FCI purchase order. It doesn't look like ER 148. So as a judge, looking at this, when the other party says there was no contract between FCI and Diversify, if you go back and look at the ones where there is a — where there's a legitimate purchase order on 141, and look at 148, they're entirely different documents. Even as time was of the essence. It's actually stated there, and they needed to move quickly on that. And so Bud Fears, on behalf of FCI, said purchase order, gave an account number, and now look at the declarations filed in support by Jack Pryor on behalf of Diversify. His declarations, as a matter of law, the factual statements in there, the variance, have to be taken as true for purposes of application to set aside — excuse me, for default judgment. And so you have to look at it in conjunction with both the allegations of the complaint, which must be presumed true if they're factual, as well as the declarations, which set forth an agreement. That's all I have. Okay. Thank you. Response. Thank you. Answering the question with regard to who has the burden of proof, Judge Reinhart's opinion in Mesley at the end of the culpability section says, in short, the district court erred in finding Mesley's conduct culpable because of his failure to act after being notified of the need to do so, in the absence of any indication that he acted in bad faith. So the record must reflect active bad faith, whether it's from their side or from our side. The fact is there's no evidence of bad faith here. And that's the standard that's required. But there's not much evidence of anything vis-à-vis the default judgment. Right. That's what makes it difficult. Absolutely. There is not much evidence of anything. But if there needs to be evidence of bad faith, there's not evidence of that either. And I think given the cases and the desire to decide cases on the merits rather than by default, rather than by gotcha games, and efficiency, by the way, is nowhere referred to in the cases. It's not referred to in the rule. Given the desire to have cases be decided on the merits, the absence of a record is sufficient here, because I think Mesley very clearly says that you need to be able to show affirmative bad faith. I think if you look at the only other recent case in which there is a finding, essentially, of bad faith, franchise holdings, there's ample evidence of bad faith there. There are lawyers all over the place. $20 million is being ‑‑ there's a fear that it's being shifted around. It took them two years after the lawyers were involved to almost two years to make the motion. I think that's really a different issue here. I think Judge Fletcher was on to something. Nobody here fell off the turnip truck. The way cases go, if you get somebody who doesn't answer, the thought that you would just assume and go on for 18 months, not contacting the person with whom you have an ongoing business relationship. This was not the first time we had business with them. They know where we were. The thought that you would sort of sit there and wait, and then wait six months and one day after the judgment is entered to notify. Now, I just find it an interesting fact. The plaintiff's counsel below was a state court practitioner. I mean, he rarely appeared in federal court. The six months and one day could be a happenstance, but it is also one day past the period in CCP 473 to undo an error or mistake. And while it may be coincidence, it may also have been planned to wait that long, erroneously thinking that he had a six-month period rather than a year period, before telling everybody that. Speaking only for myself, I am going to ignore that as I decide the case. Okay. But I do think the delay over a long period of time, when you know where these people are, is really inexplicable. The problem is once there was notification of the default judgment, why wasn't there more done to justify the district setting aside of the default? I think that's obviously a good question. I think to some extent the answer is that the plaintiff's counsel at that time, not counsel here, refused to permit that to be done. He was asked to agree not to enforce the judgment and to give more time to fully brief it. He declined that opportunity. He said, we'll go enforce the judgment. You can have more time, but we're going to enforce the judgment. So he put Skyline's counsel in a difficult position that they had to go ex parte because there was no time before his enforcement date, which was February 25th, no time before his enforcement date to have a regular notice motion on where to take discovery, where to talk to the district court. They had to go ex parte under any circumstance. And I think the fact that there is a thin record is in some part attributable to that. If he had said we won't enforce the judgment for another few months, go make a full notice motion, we'll have a hearing at the time on a full notice motion, which is what you would normally have in a notice motion as opposed to an ex parte motion, we would have been in an entirely different position and they would have had more time to do that and investigate what happened. Thank you very much. Thank you. And we were quite happy to accommodate for the reason given to have this argument first. Case of diversified product versus Skyline seal now submitted for decision. Thank you.
judges: Goodwin, Fletcher, Rawlinson